**ltIN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § | Case No. 26-80393 |
| KELLI DIANN AUSTIN, | § § | Chapter 13 |
| Debtor. | § § | **Re: Docket No. 20** |

**GLD SPONSOR MEMBER, LLC'S RESPONSES AND OBJECTIONS TO DEBTOR'S EMERGENCY MOTION FOR ORDER TO SHOW CAUSE WHY PARTIES SHOULD NOT BE HELD IN CONTEMPT AND FOR FURTHER ENFORCEMENT OF THE AUTOMATIC STAY AND DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY THROUGH PENDENCY OF THE BANKRUPTCY**

GLD Sponsor Member, LLC ("**GLD Sponsor**"), by and through undersigned counsel, hereby files its responses and objections (the "**Objections**") to Kelli Diann Austin, *pro se* (the "**Debtor**") *Emergency Motion for Order to Show Cause Why Parties Should Not Be Held in Contempt and for Further Enforcement of the Automatic Stay and Debtor's Motion to Extend the Automatic Stay through Pendency of the Bankruptcy* (the "**Motion**") [Dkt. No. 20]. In support of these Objections, GLD Sponsor respectfully states as follows:

## I. PRELIMINARY STATEMENT

This Court is asked to hold GLD Sponsor Member, LLC in contempt for violating the automatic stay and to extend that stay through the pendency of this case. Both requests should be denied. GLD Sponsor does not minimize the difficulty of the Debtor's circumstances. She is a *pro se* litigant subject to federal pretrial supervision in connection with a pending criminal proceeding in the Southern District of New York, and she has expressed genuine fear of arrest arising from the Chambers County court's contempt proceeding. Those concerns are not without weight. But sympathy for a litigant's personal circumstances does not transform legally permissible conduct

into contempt — and it cannot substitute for the affirmative showing the Bankruptcy Code requires before the automatic stay may be continued or extended.

On the contempt argument, the conduct the Debtor challenges is not GLD Sponsor's conduct. The Chambers County contempt order is the product of the state court's independent exercise of its civil contempt power — authority invoked repeatedly over more than two years in response to the Debtor's sustained and willful refusal to comply with lawful court orders. The Debtor failed to appear for depositions, ignored written discovery, refused to answer questions about her assets, and defied a turnover order that was affirmed on appeal and reinforced by multiple subsequent court orders. To the extent any contempt-related process remains outstanding, authority to modify, withdraw, recall, or suspend that process rests with the Chambers County court, not GLD Sponsor. What GLD Sponsor did do, post-petition, was halt its own enforcement activity and affirmatively file a Suggestion of Bankruptcy and Notice of Automatic Stay in the Texas Enforcement Action (defined below).

On the stay extension, the Debtor faces a statutory presumption of bad faith that she cannot rebut. Because this case was filed within one year of the dismissal of the Second Bankruptcy (defined below), the stay terminates thirty days after the Petition Date unless the Debtor affirmatively demonstrates, by clear and convincing evidence, that the present case was filed in good faith. 11 U.S.C. § 362(c)(3). That showing requires, at minimum, a credible demonstration that this case is likely to result in a confirmed chapter 13 plan that will be fully performed.

The presumption of bad faith is independently triggered on at least two grounds. First, the Second Bankruptcy dismissed on March 5, 2026, just three months before this filing was dismissed because the Debtor failed to file required documents, failed to appear at the meeting of creditors, failed to file a plan, and failed to appear at the dismissal hearing. That is precisely the conduct

described in § 362(c)(3)(C)(i)(II)(aa), and the Debtor has offered no substantial excuse for it. Second, the Debtor has not demonstrated any reason to conclude that this case will be successfully prosecuted to confirmation and full performance, as § 362(c)(3)(C)(i)(III)(bb) requires.

The schedules and plan filed in this case contain material inconsistencies. The Debtor's filing history confirms what the schedules suggest. This is her eleventh bankruptcy filing and her third in fourteen months. Each of the two immediately preceding cases were filed on the morning of a scheduled constable's sale of the Debtor's non-exempt property — halting that sale — and each collapsed without a confirmed plan, without a completed meeting of creditors, and without meaningful progress toward reorganization. The present case follows the same pattern: filed on the morning of yet another scheduled sale and unsupported by the financial consistency or changed circumstances that would distinguish it from its failed predecessors.

In short, the Debtor asks this Court for two forms of extraordinary relief — civil contempt against a creditor that has complied with the stay, and continuation of that stay in a case that bears every hallmark of a filing designed to delay rather than reorganize. The law supports neither request, and this Court should deny the Motion in its entirety.

## II. FACTUAL AND PROCEDURAL BACKGROUND

1. On June 2, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 13 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2. The Debtor's filing history is extensive. The docket in this case reflects prior bankruptcy filings in the Southern District of Texas under Case Nos. 25-80616, 25-31847, 15-30241, 14-36382, 14-31872, 13-34132, 12-32597, and 12-30170, as well as a prior filing in the Western District of Texas under Case No. 95-12199.

3. In relevant part, the 2012 and 2014 chapter 13 cases were dismissed after the Debtor failed to cure deficiencies; and the 2015 chapter 7 case was dismissed for abuse, with a three-year bar to refiling. These repeated filings, several of which ended at the deficiency stage, provide important context for the Debtor's current request for stay relief. True and correct copies of the relevant dockets are attached hereto as **Exhibit A**.

**(a) The First Bankruptcy**

4. Debtor's first 2025 bankruptcy case, Case No. 25-31847, was filed on April 1, 2025 [Dkt. No. 1], and dismissed on May 29, 2025 (the "**First Bankruptcy**"). A true and correct copy of the docket for the First Bankruptcy is attached hereto as **Exhibit B**.

5. In the First Bankruptcy, GLD Sponsor promptly sought dismissal. On April 11, 2025, it filed a Motion to Dismiss Debtor With Prejudice [Dkt. No. 11], and on April 15, 2025, it filed an Emergency Amended Motion to Dismiss Case for Cause [Dkt. No. 12], which amended the original motion. The court initially set the amended motion for hearing on April 22, 2025 [Dkt. No. 12].

6. After the Debtor filed a response [Dkt. No. 21], the hearing was continued to May 14, 2025 [Dkt. No. 23]. GLD Sponsor then filed a reply [Dkt. No. 31] and supporting witness and exhibit materials in advance of the continued hearing [Dkt. Nos. 15, 32]. At the May 14, 2025 hearing, the court heard argument on the motion [Dkt. No. 33] and entered a 14-day order requiring the Debtor to cure outstanding deficiencies by May 28, 2025 [Dkt. No. 34].

7. The Debtor did not comply with that order. On May 29, 2025, the Chapter 13 Trustee filed certificates of non-compliance and submitted proposed dismissal papers [Dkt. Nos. 38-41], after which the court entered the Order of Dismissal that same day [Dkt. No. 42]. A true and correct copy of the Order of Dismissal is attached hereto as **Exhibit C**. In short, the First

Bankruptcy progressed from filing to dismissal in less than two months, and the dismissal followed the Debtor's failure to satisfy basic filing deficiencies even after the court afforded an additional opportunity to do so.

**(b) The Second Bankruptcy**

8. Debtor's second 2025 bankruptcy case, Case No. 25-80616, was filed on December 2, 2025 [Dkt. No. 1], and dismissed on March 5, 2026 (the "**Second Bankruptcy**"). A true and correct copy of the docket for the Second Bankruptcy is attached hereto as **Exhibit D**.

9. In the Second Bankruptcy, the Debtor again began the case with material filing deficiencies. Within days of filing, the Court entered an order warning of possible future dismissal if required information was not filed [Dkt. No. 7], and the Debtor later obtained an extension of the deadline to file schedules, statements, and plan, through December 26, 2025 [Dkt. No. 14 & 14].

10. On December 10, 2025, the Debtor filed an emergency motion alleging violations of the automatic stay [Dkt. No. 13 & 24], prompting the Court to set a hearing [Dkt. No. 18]. GLD Sponsor responded [Dkt. No. 27], submitted supporting declarations and exhibits [Dkt. Nos. 28, 30], and the matter was ultimately resolved by stipulation and agreed order entered on December 18, 2025 [Dkt. Nos. 29] (the "**Stipulation**").

11. Separately, the Chapter 13 Trustee moved to dismiss the case on January 13, 2026 [Dkt. No. 33], after the Debtor failed to appear at the meeting of creditors and no plan had been filed [Dkt. No. 34]. The dismissal hearing was later reset to March 5, 2026 [Dkt. No. 43].

12. On March 5, 2026, the court dismissed the Second Bankruptcy [Dkt. No. 50]. A true and correct copy of the Order of Dismissal in the Second Bankruptcy is attached hereto as **Exhibit E**. As with the First Bankruptcy, the Second Bankruptcy ended without progress toward

confirmation and against a backdrop of unremedied filing and prosecution deficiencies, despite the court's allowance of additional time and hearing settings.

**(c) The Southern District of New York Case**

13. During the pendency of the Second Bankruptcy, the Debtor was also involved in a federal criminal proceeding in the Southern District of New York, *United States v. Austin*, No. 1:25-mj-03441-UA (the "**SDNY Case**"). A true and correct copy of the docket for the SDNY Case is attached hereto as **Exhibit F**. The Debtor was arrested on December 2, 2025 and presented in the Southern District of Texas on December 3, 2025 in connection with that proceeding, and released on bail; those conditions were extended on January 27, 2026 and again on February 2, 2026. True and correct copies of the December 30, 2025 and January 27, 2026, Orders of Continuance are attached hereto as **Exhibits G**.

**(d) The Current Bankruptcy Case**

14. The Debtor filed this chapter 13 case on June 2, 2026 [Dkt. No. 1], with schedules [Dkt. No. 6], a statement of financial affairs [Dkt. No. 7], and a chapter 13 plan [Dkt. No. 8] (the "**Current Bankruptcy Case**").

15. Also on June 2, 2026, the Debtor filed an Emergency Motion to Continue and Enforce the Automatic Stay and Stay State Court Enforcement Actions [Dkt. No. 5] (the "**First Emergency Motion**"). The following day, the Court entered an order setting the First Emergency Motion for hearing and confirming the automatic stay, initially setting the hearing for June 4, 2026 [Dkt. No. 11]. At the June 4 hearing, the Court directed the Debtor to notice the First Emergency Motion before the Court would schedule a further hearing on the motion [Dkt. No. 15]. The Court later reset the hearing on that motion to June 25, 2026 [Dkt. No. 19].

16. On June 12, 2026, the Debtor filed the present emergency motion [Dkt. No. 20], styled as an Emergency Motion for Order to Show Cause Why Parties Should Not Be Held in Contempt and for Further Enforcement of the Automatic Stay and Debtor's Motion to Extend the Automatic Stay Through Pendency of the Bankruptcy (the "**Second Emergency Motion**"), which the Court set for hearing on June 25, 2026 [Dkt. No. 23].

**(e) Debtor's Schedules, Statement of Financial Affairs, and Plan**

17. In Schedule A/B, the Debtor lists total real-estate value of $380,600, including interests in two single-family residential homes, one of which is identified as the Debtor's homestead; total financial assets of $3,337,617; and business-related property of $68,000, including a claimed trust-related interest valued at $168,000, alleged loans receivable totaling $170,000, and a $3,000,000 fraud claim against a third party [Dkt. No. 6]. Schedule D lists a single secured creditor, CarMax, holding a claim of approximately $28,000 secured by a Kia, not by any real property. Schedule I identifies the Debtor as self-employed and reports monthly net income of only $4,800. Schedule J reports monthly expenses of $1,742, does not list any car payments, and yields stated net income of $3,058 [Dkt. No. 6].

18. In the Statement of Financial Affairs, the Debtor reports gross income of $86,000 for 2026 year-to-date, $158,000 for 2024, and $296,000 for 2023, identifies pending litigation in both the Southern District of Texas and the Southern District of New York, and discloses a connection to Camelot Nevada Trust through January 30, 2026 [Dkt. No. 7].

19. The Debtor's proposed chapter 13 plan provides for payments of $2,000 per month for 60 months, with no step payments, while requiring the Debtor to pay CarMax directly $650 per month on the Kia and to cure a $3,560 CarMax arrearage through the Chapter 13 Trustee. [Dkt. No. 8] (the "**Plan**").

20. There are material inconsistencies and omissions when the Plan is considered with the Schedules, including $0 in housing expense despite a claimed homestead, unclear treatment of property taxes, no business-income detail supporting the Debtor's reported $4,800 in monthly self-employment income, no payroll deductions, and inconsistencies between the vehicles listed in the schedules and the CarMax/Kia secured claim.

**(f) GLD Sponsor's Judgment and Enforcement History**

21. On July 19, 2023, GLD Sponsor initiated an action for summary judgment in lieu of complaint under CPLR 3213 in the Supreme Court of the State of New York, New York County, *GLD Sponsor Member, LLC v. BN Holdings Trust and Kelli D. Austin*, Index No. 653490/2023 (the "**New York Action**").

22. On October 24, 2023, GLD Sponsor obtained a judgment in the amount of $443,319.73 against the Debtor and BN Holdings Trust (the "**Judgment**"). A true and correct copy of the Judgment is attached hereto as **<u>Exhibit H</u>**. On November 30, 2023, GLD Sponsor domesticated that Judgment in Texas in the 344th Judicial District Court, Chambers County, Texas, in *GLD Sponsor Member, LLC v. BN Holdings Trust and Kelli D. Austin*, Cause No. 23-DCV-0959 (the "**Texas Enforcement Action**").

23. Post-judgment discovery has been ongoing in the Texas Enforcement Action. As reflected in GLD Sponsor's state-court filings, the Debtor repeatedly failed to participate in post-judgment discovery, including failing to appear for noticed depositions, refusing to answer questions concerning assets and sources of recovery, and failing to respond to written discovery. The state court sanctioned the Debtor on June 3, 2024 and again on October 28, 2024, including monetary sanctions and daily sanctions tied to her continued noncompliance.

24. On February 18, 2025, after further noncompliance, the state court entered an additional sanctions and contempt order directing that the Debtor be confined in the Chambers County Jail for 30 days.

25. As part of its collection efforts, GLD Sponsor obtained a writ of execution directed at the Debtor's non-exempt property located at 3321 Bridgette Lane, Baytown/Mont Belvieu, Texas 77523. GLD Sponsor attempted to sell that property on April 1, 2025, but the Debtor filed the First Bankruptcy that same morning, minutes before the scheduled sale, thereby preventing the sale from going forward. Soon after that bankruptcy was dismissed, the state court entered a turnover order on or about June 30, 2025 expressly finding that the 3321 Bridgette property was owned by the Debtor, was not exempt from attachment, execution, or seizure, and was to be turned over for levy to the Chambers County Constable.

26. The Debtor appealed that turnover order, but the Fourteenth Court of Appeals dismissed the appeal on September 10, 2025 for want of prosecution. A true and correct copy of the Fourteenth Court of Appeals' dismissal order is attached hereto as **Exhibit J**. GLD Sponsor then attempted to proceed with another sale on December 2, 2025, but the Debtor again filed bankruptcy that same day, resulting in the Second Bankruptcy and again delaying execution on the property.

27. After the Second Bankruptcy was dismissed, GLD Sponsor resumed enforcement efforts and again pursued sale of the 3321 Bridgette property, with a sale scheduled for June 2, 2026.

28. On May 26, 2026, GLD Sponsor obtained an order from the Chambers County court on its motion to enforce the turnover order and for contempt, after the Debtor failed to comply

with the turnover order (the "**Contempt of Court Order**"). A true and correct copy of the Contempt of Court Order is attached hereto as **Exhibit I**.

29. In that order, the Chambers County court found that it had previously issued at least three orders sanctioning the Debtor for inappropriate conduct and failure to participate in the lawsuit, including monetary sanctions and a February 18, 2025 confinement order. *See* Contempt of Court Order, Ex. I, Findings of Fact ¶ 6. The court further found that the Debtor had not complied with the Turnover Order, had not turned over the 3321 Bridgette property or related documents and records to the Chambers County Constable, had not paid previously ordered sanctions, and had engaged in a "willful and contumacious refusal to comply with the lawful orders" of the court. *See id.*, Findings of Fact ¶¶ 7–9.

30. The Contempt of Court Order also concluded that the Chambers County court was required to conduct proceedings with dignity and in an orderly and expeditious manner and to control the proceedings so that justice is done; that the Debtor's willful failure to comply with the Turnover Order constituted contempt; that the sanctions imposed bore a direct relationship to the Debtor's offensive conduct and were no more severe than necessary to promote compliance; and that the Debtor had been afforded notice and an opportunity to be heard consistent with due process requirements applicable to constructive contempt proceedings. *See* Contempt of Court Order, Ex. I, Conclusions of Law ¶¶ 11, 14–16. Based on those findings and conclusions, the Chambers County court expressly found the Debtor in contempt for her willful failure to comply with the Turnover Order entered on or about June 30, 2025. *See id.*, Order ¶ 2.

31. According to the Debtor's own motion papers, the June 2, 2026 sale was then canceled after the Debtor sent a text message to the constable that morning stating that she had filed bankruptcy. Thereafter, GLD Sponsor filed a Suggestion of Bankruptcy and Notice of

Automatic Stay in the Texas Enforcement Action, notifying the Chambers County court that the Debtor had filed this Current Bankruptcy Case on or about June 2, 2026, and that the state-court proceedings were stayed unless and until the automatic stay was modified, terminated, or otherwise expired by operation of law.

32. Against that backdrop, the Motion should be denied. The Debtor cannot justify continuation or extension of the automatic stay, and she likewise cannot transform GLD Sponsor's stayed state-court enforcement activity into contempt or other misconduct. Far from disregarding the stay, GLD Sponsor itself notified the Chambers County court of the bankruptcy filing and the resulting stay, underscoring that the conduct challenged in the Motion is court-driven process arising from the Debtor's own prepetition noncompliance, not any post-petition defiance by GLD Sponsor.

## <u>ARGUMENT</u>

### I. GLD Sponsor Did Not Violate the Automatic Stay

GLD Sponsor has committed no violation of the automatic stay, and the Debtor cannot establish the elements required for a contempt finding against it. Section 362(a) stays, among other things, the continuation of prepetition proceedings, enforcement of prepetition judgments, and acts to collect prepetition claims. 11 U.S.C. § 362(a)(1), (2), (6). But the statute targets affirmative conduct; *see In re Village at Camp Bowie I, L.P.*, 710 F.3d 239, 246-47 (5th Cir. 2013) (courts begin with the statutory text and apply its plain meaning). Consistent with that text, the Supreme Court has explained that the stay generally preserves the status quo and prohibits affirmative acts that disturb it, rather than requiring creditors to undo every prepetition state of affairs. *City of Chicago v. Fulton*, 592 U.S. 154, 158–62 (2021). *See Edwards v. City of Ferguson (In re Edwards)*, 601 B.R. 660, 664–65 (B.A.P. 8th Cir. 2019) (holding that a creditor did not violate the automatic

stay by failing to recall or rescind a prepetition arrest warrant where the creditor took no post-petition action to enforce it, and distinguishing between staying enforcement of the warrant and requiring its affirmative recall).

The Supreme Court held that mere retention of property seized prepetition does not violate § 362(a)(3), because the stay prohibits affirmative acts that disturb the status quo; it does not impose an immediate affirmative obligation to undo prepetition conditions. 592 U.S. at 158–62. The same reasoning applies where, as here, a creditor does not advance prepetition court-issued process it does not control. *See In re Sutton*, 670 B.R. 355, 362–65 (Bankr. D. Colo. 2025) (holding that a judgment creditor did not willfully violate the stay where, after learning of the bankruptcy, he took no affirmative action to advance a prepetition contempt motion and later moved to stay the state-court contempt hearing).

To find a party in civil contempt for a stay violation, a court must determine that: (1) the creditor knew of the existence of the stay; (2) the creditor's actions were intentional; and (3) those actions constituted actual violations of § 362(a). *Young v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008). As to the third element, courts recognize that a creditor does not violate the stay where it takes reasonable, good-faith steps to halt enforcement proceedings upon learning of the bankruptcy filing, even where it lacks unilateral authority to terminate court-issued process. *See In re Buchanan*, 273 B.R. 749, 751 (Bankr. M.D. Ga. 2002) (in the context of a garnishment order, finding compliance where the creditor filed notice of the bankruptcy and communicated with the garnishee, without requiring dismissal of the garnishment); *In re Magee*, No. 18-50587-KMS, 2019 WL 1503919, at *3–4 (Bankr. S.D. Miss. Apr. 4, 2019) (in the context of a garnishment order, finding no willful stay violation where the creditor promptly notified the

issuing court of the bankruptcy filing and sought cancellation of the garnishment, even though the court initially failed to act on that notice).

These authorities defeat the Debtor's contempt theory. The Motion appears to be premised on the Debtor's assertion that state-court contempt process remains outstanding. The relevant question under § 362(a) is whether GLD Sponsor committed any affirmative post-petition act to enforce it. The record establishes that GLD Sponsor did not. GLD Sponsor has taken no post-petition enforcement action. The constable's sale scheduled for June 2, 2026 was canceled when the Debtor texted the constable that morning to advise of the bankruptcy filing. GLD Sponsor did not proceed with the sale, did not attempt to execute on any property, and did not take any step to enforce the Judgment or collect the Chambers County contempt sanctions after the bankruptcy case was filed. GLD Sponsor has not enforced the contempt motion post-petition, and did not advance the contempt proceeding after the bankruptcy filing. Instead, it filed a Suggestion of Bankruptcy and Notice of Automatic Stay in the Texas Enforcement Action, expressly advising the Chambers County court of the bankruptcy filing and the stay.

The stay prohibits affirmative collection and enforcement activity by creditors; it does not make a creditor strictly liable for court-controlled process that the creditor does not control. To the extent any contempt-related process remains outstanding, authority to modify, withdraw, recall, or suspend that process rests with the Chambers County court, not GLD Sponsor. GLD Sponsor has taken no post-petition action to enforce the Contempt Order or otherwise advance collection efforts. Accordingly, the Debtor cannot establish an affirmative act by GLD Sponsor in violation of § 362(a).

## II. The Chambers County Civil Contempt Order Is Not Subject to the Automatic Stay Because Their Primary Purpose Is to Vindicate the Authority of the State Court

Even if the Court assumes that the Chambers County contempt proceeding remains civil in nature, enforcement of that proceeding does not violate the automatic stay. Courts have repeatedly held that enforcement of a civil contempt order is not subject to the automatic stay when the issuing court's primary purpose is to vindicate the dignity and authority of its own orders, rather than to serve as a private debt-collection device. *See Sprint Communications Co. v. Buscher*, 89 B.R. 154 (D. Kan. 1988). The rationale is straightforward: bankruptcy does not strip a court of its inherent authority to enforce compliance with its lawful orders and preserve the integrity of its proceeding. *In Sprint Communications Co. v. Buscher*, 89 B.R. 154 (D. Kan. 1988), for example, a Kansas court held that the automatic stay did not prevent sentencing on a civil contempt citation for violation of a preliminary injunction. The court reasoned that it was within the court's inherent power to ensure compliance with its orders, and that it "cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge." *Id.* at 156. That reasoning has been widely adopted. *See In re Lowery*, 292 B.R. 645 (Bankr. E.D. Mo. 2003), (holding stay inapplicable to enforcement of prepetition civil contempt order seeking incarceration entered to uphold dignity of court orders); *In America Online, Inc. v. CN Productions, Inc.*, 272 B.R. 879 (E.D. Va. 2002).

The Chambers County court entered the May 26, 2026 Contempt Order just days before this bankruptcy was filed to preserve the integrity of its proceedings and to address the Debtor's continued defiance of the 344th District Court's lawful discovery, sanctions, and turnover orders entered on June 3, 2024, October 28, 2024, February 18, 2025, and June 30, 2025. The state court's purpose was not to serve as a collection mechanism for GLD Sponsor, but to enforce compliance

with its own orders and preserve the integrity of its proceeding. *See* Contempt of Court Order, Ex. I, Conclusions of Law ¶ 11.

The Contempt Order that now gives the Debtor concern is the direct product of that sustained, willful noncompliance. *See* Contempt of Court Order, Ex. I, Findings of Fact ¶¶ 8–9. The primary purpose of the Chambers County contempt enforcement mechanism is and has always been to uphold the dignity of court orders, enforce compliance, and vindicate the authority of that court, and not to collect a debt for GLD Sponsor.

**A. The Criminal Exception Under § 362(b)(1)**

A separate and independent basis exists to conclude that the contempt proceedings fall outside the automatic stay. To the extent the Court concludes that the nature of the contempt sanction controls the analysis, the Chambers County Contempt Order now functions as criminal process excepted from the automatic stay under § 362(b)(1), which excepts "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1). Courts have long recognized that the label attached to a contempt proceeding is not controlling. Rather, courts look to the purpose served by the sanction. *See In re Stewart*, 571 F.2d 958, 963–64 (5th Cir. 1978) (distinguishing civil contempt, which is coercive and remedial, from criminal contempt, which serves to punish past misconduct and vindicate the authority of the court). Where a contempt order is intended to vindicate the authority of the court rather than coerce payment of a debt, courts have consistently found it to be criminal in nature and outside the scope of the stay. *In re Burgess*, 503 B.R. 154, 162 (Bankr. M.D. Fla. 2014) (holding that a contempt order that was criminal in nature could never be excepted from the scope of the automatic stay would "allow unscrupulous debtors to violate the rights of others with impunity."); *In re Maloney*, 204 B.R. 671 (Bankr. E.D.N.Y. 1996) (commitment order "issued to protect the dignity and the power of the

State Court" was criminal in nature and fell within § 362(b)(1)). *In re Rook*, 102 B.R. 490 (Bankr. E.D. Va. 1989) (holding that civil contempt converts to criminal contempt outside the automatic stay once the debtor has had, and failed to use, the opportunity to purge).

The Debtor has consistently refused to participate in post-judgment discovery and scheduled proceedings and to comply with the state court's turnover order. The Contempt Order arose not from a single incident but from a multi-year pattern of willful noncompliance with court orders dating to at least mid-2024. By the time the Petition Date arrived on June 2, 2026, the Debtor had exhausted any window for voluntary compliance that might have given the contempt mechanism its coercive, civil character. The Contempt Order reflects the court's determination that the Debtor must be held accountable for her defiance of its authority, and that process falls outside the automatic stay under § 362(b)(1).

**B. The Debtor Cannot Use the Automatic Stay to Immunize Ongoing Contempt**

There is a fundamental principle that runs through the case law in this area: the bankruptcy process cannot be invoked to immunize contumacious behavior. *America Online*, 272 B.R. at 882. The Debtor has now filed her third bankruptcy case timed to the eve of enforcement, in each instance using the petition filing to halt state court action arising from her own prolonged and willful noncompliance with court orders. The automatic stay was designed to give the honest debtor a breathing spell and to preserve the orderly administration of the estate. It was not designed to serve as a revolving shield against the consequences of years of contemptuous conduct toward a state court that has sanctioned, issued successive turnover orders, which the Debtor has ignored.

As the court in *Buscher* observed, it cannot be that Congress intended to permit a party to "blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge." 89 B.R. at 156. The Debtor's Motion asks this Court to do exactly that, to hold GLD Sponsor in

contempt for the state court's independent enforcement of its own authority against a debtor who has spent years evading compliance.

### C. The Appropriate Relief, If Any, Is Not Contempt Against GLD Sponsor

To the extent the Debtor has a legitimate concern about the possibility of arrest pursuant to the Contempt Order, the appropriate relief is not a contempt finding against GLD Sponsor. The appropriate avenue would be a motion for relief directed at the Chambers County 344th District Court, or an application to this Court for a specific order directed to appropriate state court personnel. GLD Sponsor takes no position on whether such relief is available or appropriate; it notes only that a contempt motion against a creditor that has complied with the stay is not the proper mechanism to seek it.

GLD Sponsor respectfully submits that it has complied with its obligations under the Bankruptcy Code by ceasing enforcement activity and filing a Suggestion of Bankruptcy and Notice of Automatic Stay in the Texas Enforcement Action. GLD Sponsor does not believe § 362 requires it to take any further action with respect to state-court process that it does not control. Nevertheless, should this Court determine that additional action is required to effectuate the stay, GLD Sponsor will promptly comply with any directive issued by this Court.

For these reasons, the Debtor's contempt request should be denied. The Chambers County contempt order falls outside the automatic stay under both the "dignity of court" doctrine and § 362(b)(1). In any event, GLD Sponsor complied with the stay and took no post-petition enforcement action.

## III. The Debtor Is Not Entitled to Continuation or Extension of the Automatic Stay

The Debtor's burden is not merely to explain why her prior case failed. She must demonstrate why this case will succeed where the immediately preceding case did not. The Motion

never answers that question. Instead, the record reflects the same judgment, the same property, the same enforcement activity, and substantially the same financial circumstances that existed when the Second Bankruptcy was dismissed less than three months ago.

Because this case was filed within one year of the dismissal of the Debtor's immediately preceding bankruptcy case, continuation of the automatic stay beyond the initial thirty-day period is not automatic. It requires an affirmative showing that the present case was filed in good faith as to the creditors to be stayed. 11 U.S.C. § 362(c)(3)(A)–(B). Courts construing § 362(c)(3)(B) have identified four minimum requirements for continuation of the stay: (1) a timely motion; (2) notice and a hearing; (3) completion of the hearing before expiration of the thirty-day period; and (4) proof by the debtor that the current case "is in good faith as to the creditors to be stayed." *In re Collins*, 335 B.R. 646, 650 (Bankr. S.D. Tex. 2005); *In re Charles (Charles II)*, 334 B.R. 207, 211–12 (Bankr. S.D. Tex. 2005). The Debtor cannot satisfy the fourth and most critical requirement.

**A. The Statutory Presumption of Bad Faith Applies and Heightens the Debtor's Burden**

Where either subparagraph § 362(c)(3)(C)(i) or (ii) is satisfied, the filing is presumed not to have been made in good faith, and the Debtor's burden becomes substantially more demanding. *Charles II*, 334 B.R. at 215–17. The standard of proof required to establish the predicates for the presumption is a preponderance of the evidence, though the allocation of that burden varies by issue. *Id*. at 215–16. In that framework, the burden rests on the opponent of stay extension to establish, among other things, that the prior case was dismissed for one of the reasons enumerated in § 362(c)(3)(C)(i)(II) — including the failure to amend the petition or other required documents. § 362(c)(3)(C)(i)(II)(aa). The burden then shifts to the Debtor to demonstrate substantial excuse for that failure and to negate the conditions set forth in § 362(c)(3)(C)(i)(III) — specifically, to

show either a substantial change in financial or personal affairs since the prior dismissal, or some other basis to conclude that the present case will be successfully prosecuted to confirmation and full performance. *Charles II*, 334 B.R. at 216–17. As set forth below, the Debtor cannot satisfy either of those requirements.

**B. The Present Case Is Presumptively Not Filed in Good Faith Under § 362(c)(3)(C)(i)(II)(aa)**

The Debtor filed this case on June 2, 2026 — less than three months after the dismissal of the Second Bankruptcy on March 5, 2026, and well within the statutory one-year lookback period. *See In re Lundquist*, 371 B.R. 183, 186–89 (Bankr. N.D. Tex. 2007) (the one-year lookback runs from the date of dismissal).

The Second Bankruptcy was dismissed because the Debtor failed to file documents required by the Bankruptcy Code and the Court, and the present record reflects no substantial excuse for those failures. The pattern of noncompliance in that case was pronounced. Within days of filing, the Court entered an order warning that dismissal was possible if required information was not submitted, separately noted that no proof of credit counseling had been filed, and later extended the deadline for completing the missing filings, including schedules, a statement of financial affairs, and other required chapter 13 documents, through January 26, 2026. Despite that additional time, the case never progressed: the Chapter 13 Trustee moved to dismiss, no plan was filed, the Debtor failed to appear at the meeting of creditors, and the Trustee did not recommend confirmation. The Second Bankruptcy failed not because of some isolated external event beyond the Debtor's control, but because the Debtor did not satisfy the basic obligations necessary to prosecute a chapter 13 case.

Nor has the Debtor demonstrated any "substantial excuse" for those failures — a burden that rests squarely on her. *Charles II*, 334 B.R. at 215–16. The Motion invokes incarceration,

injury, and federal pretrial supervision as justification, but those circumstances do not establish substantial excuse on this record. The Debtor received notice of the deficiencies, was granted additional time to cure them, and was afforded a reset dismissal hearing. She nonetheless failed to file the required materials, failed to appear at the meeting of creditors, failed to file a plan, and failed to appear at the dismissal hearing.

The Debtor's reliance on incarceration is particularly unavailing. The record reflects that the Debtor was arrested on December 2, 2025, in connection with the Southern District of New York criminal proceeding, and was separately confined in the Chambers County Jail during the early weeks of the Second Bankruptcy. *See* Ex. 1; *see also* Exs. 2–3; Stipulation and Agreed Order Regarding Debtor's Incarceration [Dkt. No. 31]. Yet despite that detention, the Debtor actively litigated during the same period: on December 10, 2025, she filed an emergency motion alleging stay violations [Dkt. No. 13]; and the matter was resolved by stipulation and agreed order entered December 18, 2025 [Dkt. Nos. 29, 31]. That litigation activity during the very period of claimed incapacity undercuts any assertion that she was unable to take the basic steps necessary to prosecute her case. On this record, the predicate for the presumption under § 362(c)(3)(C)(i)(II)(aa) is established, and the Debtor has offered no credible basis to excuse it.

### C. The Present Case Is Presumptively Not Filed in Good Faith Under § 362(c)(3)(C)(i)(III)(bb)

Under § 362(c)(3)(C)(i)(III)(bb), a case is presumptively not filed in good faith unless the debtor demonstrates "any other reason to conclude that the later case will be concluded" with a confirmed chapter 13 plan that will be fully performed. 11 U.S.C. § 362(c)(3)(C)(i)(III)(bb). That inquiry focuses on whether the debtor is realistically positioned to confirm a feasible plan and perform under it. *In re Collins*, 335 B.R. at 651–53. Where the record does not support that

conclusion because the schedules are internally inconsistent, the plan is inadequately funded, or the debtor's financial disclosures are unreliable, the presumption of bad faith arises. *Id.* at 652–53. The present case fits that description precisely.

On its face, the Debtor's current budget appears borderline workable: Schedule I lists monthly income of $4,800, Schedule J lists expenses of $1,742, and the resulting stated net disposable income is $3,058. The plan proposes payments of $2,000 per month for sixty months, while also requiring a direct $650 monthly car payment to CarMax and cure of a $3,560 vehicle arrearage through the trustee. On that narrow arithmetic, the Debtor appears to retain approximately $408 per month in surplus. But this Court is not required to accept facial numbers at face value where the underlying disclosures are incomplete, internally inconsistent, or otherwise unreliable. *Collins*, 335 B.R. at 652. Here, the schedules and plan contain multiple material defects that undermine any credible conclusion that this case is likely to end in a confirmed, fully performed plan.

The budget is unreliable. The Debtor lists $0 in housing expense despite claiming a homestead, while simultaneously listing a property tax expense on Schedule J and inserting an ambiguous nonstandard plan provision purporting to address $10,000 in property taxes to be paid in an amount of "$139" but without identifying the payee, the payment frequency, or whether that amount is already reflected in the budget. The Debtor also lists a secured CarMax obligation with a $650 direct payment requirement, yet the vehicles identified elsewhere in the schedules do not reconcile to that collateral, and Schedule J lists $0 for car loan payments that is a direct internal inconsistency. The Debtor further claims self-employment income of $4,800 per month but provides no supporting business income detail, even though Schedule I expressly calls for a gross-receipts-and-expense breakdown for business income. These are not minor formatting errors. They

are precisely the kind of unexplained inconsistencies and omissions that led the *Collins* court to conclude that the schedules could not be relied upon to establish feasibility. *Id*. at 652–53.

The plan itself is internally deficient. The plan proposes a $2,000 monthly payment over sixty months, a $144,000 trustee base, while separately providing that nonpriority unsecured creditors will receive the greater of $129,600 or remaining funds after other disbursements, and additionally classifying GLD Sponsor for a $90,000 disputed judgment payment. Yet the plan's summary exhibit detailing total projected trustee disbursements is blank, and the plan does not demonstrate that the proposed $144,000 base is sufficient to satisfy all secured, priority, separately classified, and general unsecured treatment it simultaneously purports to provide. That internal funding gap matters independently: a debtor cannot demonstrate a reasonable likelihood of successful conclusion where the plan's own arithmetic does not close.

The broader financial disclosures compound the problem. In the Statement of Financial Affairs, the Debtor reports gross income of $86,000 year-to-date for 2026, $158,000 for 2024, and $296,000 for 2023 — yet lists only $4,800 in current monthly income on Schedule I, with no explanation for the dramatic divergence. Schedule A/B further lists over $3.3 million in financial assets, including a $3,000,000 fraud claim against a third party, trust-related interests, and alleged receivables. None of those contingent and disputed items is shown to be liquid, collectible, or available to fund plan performance. Rather than lending confidence to the Debtor's financial picture, the unexplained gap between her asserted historical income, her reported present income, and her claimed asset portfolio makes the record less reliable —not more. Where a debtor's financial record is internally inconsistent and she cannot demonstrate a credible path to full plan performance, the Court should find that the case is not likely to result in a confirmed and fully

performed plan, and that the presumption under § 362(c)(3)(C)(i)(III)(bb) is triggered. *Id.* at 651–53.

Because the Debtor cannot carry her burden under § 362(c)(3)(C)(i)(III)(bb), and because the presumption of bad faith arises under at least two independent provisions of § 362(c)(3)(C), she must now rebut that presumption by clear and convincing evidence. *Charles II*, 334 B.R. at 215–16; *Collins*, 335 B.R. at 650–51. She cannot do so.

**D. The Debtor Cannot Establish Good Faith by Clear and Convincing Evidence**

The Debtor bears the burden of proving that this case was filed in good faith as to the creditors to be stayed, *Charles II*, 334 B.R. at 215, and because the presumption of bad faith has been triggered, she must satisfy that burden by clear and convincing evidence. *Id.* at 215–16; *Collins*, 335 B.R. at 650–51. She cannot meet that heightened standard. Courts in this district evaluate good faith under a sequential framework. The threshold inquiry is objective: whether the present case is realistically likely to result in a confirmed plan and discharge. *Collins*, 335 B.R. at 651–52. Only if that showing is made does the court proceed to the broader totality-of-the-circumstances analysis. *Charles II*, 334 B.R. at 217–18. The Debtor fails at the threshold.

As detailed above, the Debtor's schedules and plan are materially inconsistent, inadequately supported, and internally deficient. The Debtor has not reconciled the stark disparity between her reported historical income and her current Schedule I disclosure. She has not demonstrated that the plan's proposed funding is sufficient to satisfy its promised disbursements. And she has not shown that her financial position has materially improved since the dismissal of the Second Bankruptcy. Where the schedules are unreliable and the debtor lacks the demonstrated financial capacity to fund a feasible plan, the Court should find that the case is unlikely to result in confirmation and full performance and deny continuation of the stay accordingly. *See Collins*,

335 B.R. at 652–53. That failure is independently dispositive. *Charles II*, 334 B.R. at 219 (debtor fails to sustain her burden where the case lacks a reasonable probability of success).

Even setting aside the threshold feasibility deficiency, the totality of the circumstances confirms that the Debtor has not carried her burden. Courts in this District look to the eight nonexclusive *Charles* factors when assessing good faith under § 362(c)(3): (1) whether the creditor to be stayed agrees to the extension; (2) whether the debtor is likely to obtain a discharge; (3) the nature of the creditor's debt; (4) the nature of the creditor's collateral; (5) whether the debtor made eve-of-bankruptcy purchases; (6) the debtor's conduct in the pending case; (7) the debtor's reason for seeking the stay extension; and (8) any unique facts or circumstances. *Charles II*, 334 B.R. at 219–23; *Collins*, 335 B.R. at 651–53; *In re Wright*, 533 B.R. 222, 233–38 (Bankr. S.D. Tex. 2015). Those factors weigh heavily against continuation of the stay here.

First, GLD Sponsor does not agree to any extension of the stay and has opposed the requested relief. Second, the Debtor has not shown that this case is likely to result in a confirmed and fully performed chapter 13 plan or discharge. The schedules and plan are internally inconsistent, the plan's funding does not reconcile with its proposed treatment, and the Debtor has not identified any material change in circumstances since the Second Bankruptcy was dismissed.

Third and fourth, the debt and collateral both support denial of the stay extension. GLD Sponsor holds a substantial judgment arising from the New York Action, domesticated in Texas, and has pursued ordinary post-judgment remedies against non-exempt property that the Chambers County court already found to be subject to turnover and execution. The Debtor's repeated bankruptcy filings have prevented GLD Sponsor from completing those remedies, including sales scheduled for April 1, 2025, December 2, 2025, and June 2, 2026. As in *Wright*, where the court found that a secured creditor's collateral position and the debtor's prolonged obstruction of

enforcement weighed against continuation of the stay, the nature of GLD Sponsor's debt and collateral weighs against the Debtor here. 533 B.R. at 235–36.

Fifth and sixth, the Debtor's filing pattern and case conduct further undermine good faith. Although the record does not establish a specific eve-of-bankruptcy purchase, it does establish repeated eve-of-enforcement bankruptcy filings. The First Bankruptcy was filed on the morning of a scheduled constable's sale; the Second Bankruptcy was filed on the morning of the next scheduled sale; and this case was filed on the morning of the June 2, 2026 sale. The Debtor then seeks continuation of the stay in a case that repeats the same defects that doomed the Second Bankruptcy: unreliable disclosures, an unsupported income picture, unresolved plan arithmetic, and no credible showing that this case will proceed differently. Her prior case conduct is equally problematic: the Second Bankruptcy was dismissed after she failed to file required documents, failed to appear at the meeting of creditors, failed to file a plan, and failed to appear at the dismissal hearing.

Seventh, the Debtor's stated reason for extending the stay appears to be preservation of the 3321 Bridgette property and protection from state-court enforcement. But courts distinguish between a debtor who seeks breathing room for a genuine reorganization and one who uses the stay as a litigation tool. *Charles II*, 334 B.R. at 222–23. Here, the Debtor has not tied the requested stay extension to a feasible reorganization; instead, the request functions primarily to halt GLD Sponsor's long-running enforcement efforts after years of noncompliance with state-court discovery, sanctions, and turnover orders.

Eighth, the unique circumstances are especially unfavorable to the Debtor. This is the Debtor's eleventh bankruptcy filing, her third in fourteen months, and the third recent filing timed to stop execution on the same non-exempt property. The current case follows a dismissed case in

which she failed to meet basic chapter 13 obligations, and it is supported by schedules and a plan that do not provide a reliable basis for finding feasibility. As in *Wright*, where the court denied stay continuation despite the debtor's claimed equity because the totality of the circumstances showed delay, unreliable disclosures, and failure to account for creditor interests, the Debtor's present showing falls far short of clear and convincing evidence of good faith. 533 B.R. at 238–41.

In sum, the Debtor has not overcome the statutory presumption that this case was filed in bad faith. She has not shown a substantial change in circumstances, a reliable path to confirmation, or a credible basis to conclude that this case will be successfully completed where the Second Bankruptcy was not. The objective feasibility defects alone warrant denial of stay continuation; the totality of the circumstances only confirms that result. Because the Debtor has not established good faith by clear and convincing evidence, the Motion should be denied to the extent it seeks continuation or extension of the automatic stay.

## RESERVATION OF RIGHTS

GLD Sponsor expressly reserves all rights, claims, defenses, arguments, and remedies available at law or in equity, including the right to supplement, amend, or otherwise revise these Objections as additional facts or arguments become known, and nothing herein shall be construed as a waiver of any such rights.

## CERTIFICATION OF CONFERENCE

No conference was held before the filing of this Objections because the Motion was filed on an emergency basis and set for an expedited hearing. Given the contested nature of the relief

requested, including contempt findings, enforcement of the automatic stay, and continuation or extension of the stay under, the parties' positions could not reasonably be resolved without Court intervention.

## CONCLUSION

WHEREFORE, for the reasons set forth above, GLD Sponsor respectfully requests that the Court deny the Motion in its entirety, decline to extend or continue the automatic stay, reject the Debtor's request for contempt findings, and grant GLD Sponsor such other and further relief to which it may be justly entitled.

Date: June 22, 2026

Respectfully submitted,

**AKERMAN LLP**

*/s/ Laura M. Taveras*

Laura M. Taveras, SBN: 24127243
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
laura.taveras@akerman.com

*Attorneys for GLD Sponsor Member, LLC*

## CERTIFICATE OF SERVICE

I certify that on June 22, 2026, a true and correct copy of the foregoing document was served via email and federal express upon the following:

**Debtor**
Kelli Diann Austin, *pro se*
3321 Bridgette Lane
Mont Belvieu, TX 77523

Kelli Diann Austin, *pro se*
3002 Royal Palm
Baytown, TX 77523
KelliDAustin@gmail.com

**Chapter 13 Trustee**
Yvonne V. Valdez
Chapter 13 Trustee
539 N. Carancahua, Ste. 800
Corpus Christi, TX 78401
ecfmail@ch13cctx.com

**United States Trustee**
Office of the United States Trustee
515 Rusk Avenue, Ste. 3516
Houston, TX 77002
USTPRegion07.HU.ECF@USDOJ.GOV

*/s/ Laura M. Taveras*
Laura M. Taveras